UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON


CIVIL ACTION NO. 11-08-GWU


ELIZABETH BARRETT,                                          PLAINTIFF,


VS.                          **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                  DEFENDANT.


## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her application for Disability Insurance Benefits (DIB).  The appeal is

currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

1.    Is the claimant currently engaged in substantial gainful activity?
      If so, the claimant is not disabled and the claim is denied.

2.    If the claimant is not currently engaged in substantial gainful
      activity, does he have any "severe" impairment or combination
      of impairments--i.e., any impairments significantly limiting his
      physical or mental ability to do basic work activities?  If not, a
      finding of non-disability is made and the claim is denied.

3.    The third step requires the Commissioner to determine
      whether the claimant's severe impairment(s) or combination of
      impairments meets or equals in severity an impairment listed
      in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of

1

       Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.     At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.     If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.

1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir.

1997).

       Review of the Commissioner's decision is limited in scope to determining

whether the findings of fact made are supported by substantial evidence.  Jones v.

Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir.

1991).  This "substantial evidence" is "such evidence as a reasonable mind shall

accept as adequate to support a conclusion;" it is based on the record as a whole

and must take into account whatever in the record fairly detracts from its weight.

Garner, 745 F.2d at 387.

       In reviewing the record, the court must work with the medical evidence before

it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical

vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e);

4

however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Id. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Elizabeth Barrett, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of a cognitive disorder, rule out memory loss; a major depressive disorder; Grade II chondromalacia of the left knee; degenerative changes of the thoracic spine; degenerative disc disease of L5-S1 status post placement of artificial disc, with chronic low back pain and cervical strain with neck pain.  (Tr. 11).  Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mrs. Barrett retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 16-20).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether the plaintiff, a 53-year-old woman with a masters degree and work experience as a teacher and

5

a college professor, could perform any jobs if she were limited to lifting 20 pounds occasionally and 10 pounds frequently, and also had the following non-exertional restrictions.  She: (1) could only occasionally stoop, kneel, crouch, climb ramps or stairs, and reach overhead; (2) could never crawl or climb ladders, ropes, or scaffolds; (3) could no more than "frequently" extend or flex her head from side to side; (4) needed to avoid concentrated exposure to full body vibration;  (5) would be able to learn, remember, and carry out simple to more detailed work activities in an object-focused non-public work environment in which contact with coworkers and supervisors was casual and infrequent; and (6) could adapt to routine changes in work activities.  (Tr. 73).  The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies.

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff alleged disability due to a traumatic brain injury and a back injury, which had resulted in surgery to insert an artificial disc.  (Tr. 192).  She testified that short-term memory loss following her head injury in a motor vehicle accident had made it difficult for her to continue a teaching job.  (Tr. 33, 37, 43-44).  She also had low back and neck pain, along with headaches, and was depressed because she was not able to perform her usual activities.  (Tr. 37-38).  She also complained of anxiety and panic attacks, although medication was helpful.  (Tr. 50-

6

51, 71).  Despite her problems, she was able to act as a caregiver for her mentally disabled husband, could largely take care of her personal needs, was able to cook if she had help with heavy items, would watch television, and would do some reading, although she was unable to follow the plot of a novel.  (Tr. 36, 54, 58).  On the other hand, she required the assistance of a nurse to take care of her husband, could not work for more than 15 to 30 minutes doing housework without a break, used a device to extend her reach rather than bending over, and had to ride a cart to go grocery shopping.  (Tr. 36, 42, 54, 65).

Medical evidence in the transcript includes a discharge summary from St. Joseph Hospital indicating that Mrs. Barrett was involved in a motor vehicle accident in January, 2006 and hit her left temple.  (Tr. 248).  A CT scan of the head was read as showing no acute abnormalities at the time (Tr. 254), but she complained of amnesia and forgetfulness as well as confusion and worsening of anxiety and depression to a neuropsychologist, Dr. C. Christopher Allen, in March, 2006 (Tr. 330).   Dr. Allen conducted testing that showed a significant deviation in Mrs. Barrett's immediate visual attention.  (Tr. 331).  He concluded that a preponderance of the evidence suggested that she had sustained some neural, psychological and emotional sequela to a traumatic brain injury received in her recent motor vehicle accident.  (Id).  At a deposition in August, 2009, Dr. Allen stated that Mrs. Barrett's deficits would show up in subtle ways in her life, such as difficulty with problem solving and coping with stresses.  (Tr. 491-92).  He thought that she was capable

of operating effectively as a teacher for short periods of time but not for extended periods.  (Tr. 503).  He later prepared a summary of her condition, apparently following a "neuropsychological retest," which he interpreted as providing a valid profile.  (Tr. 561).  There was a significant impairment in her visual learning and memory, but no other significant deficits. (Id.).  She also appeared to be extremely depressed, anxious, and interpersonally sensitive.  (Id.).  He felt that she would have a "seriously limited but not precluded" ability to carry out detailed instructions, interact appropriately with supervisors, respond appropriately to work pressures in a work setting, and respond appropriately to changes in a routine work setting.  (Tr. 562-63).

A consultative mental status evaluation by Psychologist Christi Hundley on August 28, 2008 produced a somewhat different picture.  The plaintiff gave a history of having a breakdown at work in March 2006 and a psychiatric hospitalization for depression in May, 2006, and noted that she was seeing Dr. Allen weekly for mental health treatment and receiving antidepressant medications from her family doctor. (Tr. 345).  She stated that she was irritable and would cry at the drop of a hat, and was not sure if her depression ever went away.  (Tr. 346).  Apparently, Dr. Hundley did not have any records for review, although records of the psychiatric hospitalization were later submitted to the ALJ.  (Tr. 678).  Mrs. Barrett related that she stayed busy doing "paperwork," watched six hours of television a day, and helped her husband with his daily activities.  (Tr. 346).  Dr. Hundley diagnosed a

major depressive disorder, with a Global Assessment of Functioning (GAF) score of 55.  (Tr. 347).  A GAF score in this range reflects moderate symptoms.  Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34.  Dr. Hundley felt that Mrs. Barrett's ability to handle work stresses typically associated with a work environment was "fair to guarded," and her ability to interact appropriately in a work setting was "fair."  Her ability to understand and remember simple instructions was "fair to good," and she had a "good" ability to maintain attention and concentration.  (Tr. 348).

A non-examining state agency psychologist, Dr. Jan Jacobson, reviewed the evidence shortly after Dr. Hundley's report was submitted, and opined that Mrs. Barrett did not have a "severe" mental impairment.  (Tr. 357).  She interpreted Dr. Allen's report as concluding that the plaintiff could work with certain accommodations but she did not feel that the accommodations were consistent with certain statements by her employer.  (Tr. 369).  Apparently this is a reference to a report of contact by a state agency employee with a person described only as "Dr. Schlingmann," and dated September 30, 2008, the day after Dr. Jacobson's report.  In any case, the source stated that he did not see the plaintiff often because she taught night classes and he worked during the day, but she handled stress well, was able to get along with coworkers, students, and supervisors, and was able to carry out simple instructions.  (Tr. 220).  Subsequently, another non-examining state agency psychologist agreed with Dr. Jacobson's assessment.  (Tr. 417).  Neither

source had the benefit of a review of Dr. Allen's subsequent deposition and functional capacity assessment.

Other evidence shows that Mrs. Barrett underwent the placement of an artificial disk at the L5-S1 level in May, 2006.  (Tr. 256).  It was noted that she previously had lumbar surgery that was not helpful and an MRI had showed severe disc desiccation at L5-S1 along with mild right foraminal narrowing.  (Id.).  She was discharged in stable condition with apparently temporary restrictions to sedentary lifting.  (Tr. 257).  Records from orthopedic surgeon Dr. Joseph Dobner from March, 2007 reflect a complaint of knee pain and swelling.  She was given an injection, and an MRI showed early Grade II chondromalacia of the left knee.  (Tr. 293-8, 301-2).

Dr. Clair Palley became Mrs. Barrett's treating family physician in August, 2008 and noted her complaints of chronic back pain, with a history of unsuccessful treatment at a pain clinic, as well as neck pain, headaches, and memory loss.  (Tr. 338).  She found tenderness and pain in the back and neck, among other things.  (Tr. 339).  Dr. Palley offered the opinion in a deposition that she did not believe her patient would be able to engage in gainful employment, also noting that she had reviewed the older records, apparently including the back surgery.  (Tr. 466, 472-74).  In a medical report dated May 19, 2010, Dr. Palley stated that Mrs. Barrett could lift a maximum of 10 pounds, could stand and walk two hours in an eight-hour day (no more than 10 to 15 minutes without interruption), could sit four hours in an eight-hour day (no more than 30 minutes without interruption), could occasionally

climb, balance, stoop, crouch, kneel and crawl, had restrictions on reaching, pushing, pulling, working around moving machinery and vibration, and also had a "seriously limited but not precluded" ability to follow work rules, and a limited but satisfactory ability to maintain attention and concentration.  (Tr. 557-60).

While a state agency physician, Dr. S. Mukherjee, completed a physical residual functional capacity assessment in February, 2009 indicating that the plaintiff could perform medium level exertion (Tr. 433-40), he also did not review or comment on the treating physician's restrictions, which were submitted subsequently.

In his decision, the ALJ stated that he would not give any weight to Dr. Palley's opinion that Mrs. Barrett was "disabled," a reasonable finding since it was a vocational conclusion outside a doctor's area of expertise.  (Tr. 18).  Regarding the specific restrictions given by Dr. Palley and Dr. Allen, the ALJ merely stated that "I have considered but accorded limited weight to [the] physical residual functional capacity of Dr. Palley as it is inconsistent with medical records[.]  I also consider the mental residual functional capacity of Christopher Allen but it is also inconsistent with the weight of the medical evidence and her extensive activities of daily living." (Tr. 19).

On appeal, the plaintiff maintains that the ALJ's stated rationale for rejecting the treating source opinions was inadequate.  The court agrees.

11

11-08  Elizabeth Barrett

The Sixth Circuit has repeatedly held that a denial of benefits will be reversed and remanded even in cases where substantial evidence otherwise supports the decision of the Commissioner when the ALJ fails to give "good reasons" for discounting the opinion of a treating physician.  Wilson v.  Commissioner of Social Security, 378 F.3d 541, 543-46 (6th Cir. 2004). "[W]hile it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." Friend v. Commissioner of Social Security, 375 Fed.Appx. 543, 2010 WL 1725066 (6th Cir. 2010).  As in the present case, the ALJ did not describe the objective findings that were at issue or their inconsistency with the treating physician opinions.  Moreover, the court has noted that a finding that a treating source opinion is inconsistent with the other evidence of record means only that it is not entitled to "controlling weight," not that it should be rejected out of hand.  Blakley v. Commissioner of Social Security, 581 F.3d 399, 406 (6th Cir. 2009). The opinion should be weighed using factors provided in 20 C.F.R.  § 404.1527.  Id.

Moreover, regarding the plaintiff's daily activities, the ALJ needed to elucidate the ways in which the plaintiff's daily activities were inconsistent with the treating source limitations.  The Sixth Circuit has found that activities such as driving, cleaning an apartment, caring for pets, doing laundry, reading, stretching exercises and watching news on TV were "somewhat minimal daily functions [which] are not

12

11-08  Elizabeth Barrett

comparable to typical work activities." <u>Rogers v. Commissioner of Social Security</u>, 486 F.3d 234, 248 (6th Cir. 2007).  While the plaintiff did engage in activities, she also asserted that she was limited in her ability to perform them for more than short periods, as described above.

Finally, while reliance on non-examining sources over treating sources is permissible in some situations, such as when the non-examiner has had access to the entire case record, such was not the case here.  Social Security Ruling 96-6p; <u>Rogers</u>, 486 F.3d at 245 n. 4.

The decision will be remanded for further consideration.

This the 1st day of December, 2011.

**Signed By:**

**G. Wix Unthank**

**United States Senior Judge**

13